UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| REBECCA THOMASSON,<br><br>Plaintiff,<br><br>vs.<br><br>PHILIP D. STERN,<br><br>Defendant. | §<br>§<br>§<br>§<br>§   Civil Action No. 5:21-cv-00687<br>§<br>§<br>§<br>§<br>§ |

**PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Rebecca Thomasson, files this Complaint and Demand for Jury Trial against Defendant, Philip D. Stern, and, in support of her causes of action, shows the following:

### I.   PARTIES

1. Plaintiff, Rebecca Thomasson, is a natural person and a citizen and resident of San Antonio, Bexar County, Texas.

2. Defendant, Philip D. Stern, is a natural person and a citizen and resident of Maplewood Township, Essex County, New Jersey. Defendant may be served with process at 21 Girard Place, Maplewood, New Jersey 07040 or wherever he may be found.

### II.   JURISDICTION AND VENUE

3. Jurisdiction of this Court arises under 28 U.S.C. § 1332(a).

4. This is a civil action between Plaintiff, a Texas citizen, and Defendant, a New Jersey resident, and the matter in controversy exceeds $75,000, exclusive of costs and interest.

5. Plaintiff seeks recovery of more than $1,000,000 for her damages in this case.

6. This Court has personal jurisdiction over Defendant because he regularly engages in foreseeable, intentional, continuous, and systematic contacts within Texas including, the filing lawsuits in this Court and other Texas courts, performing work in the State of Texas, and entering contracts with Texas citizens. Consequently, Defendant has sufficient minimum contacts, both in general and regarding this specific action, such that exercising jurisdiction over him does not violate his right to due process or offend the traditional notions of fair play and substantial justice.

7. Venue is appropriate in the United States District Court for the Western District of Texas, San Antonio Division under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred within this federal judicial district, and because the Defendant regularly transacts business within this federal judicial district and, therefore, he resides in the State of Texas within the meaning of 28 U.S.C. § 1391(b) and (c).

### III. BACKGROUND FACTS

8. Plaintiff is a citizen of, and resides in, the City of San Antonio, Bexar County, Texas.

9. Stern is an attorney who is licensed to practice law in the State of New Jersey; he is also admitted to practice in the United States District Court for the Western District of Texas.

10. Plaintiff is an employee of, and works in, the consumer banking and loan division of a large national company located in San Antonio, Texas.

11. Plaintiff has an exemplary credit record and reputation, and she has never been accused of engaging in a crime, financial impropriety, or any other act of dishonesty.

12. Plaintiff's husband and Stern were once law partners.

13. Stern has a personal vendetta against Plaintiff's husband, which he has vindictively taken out on Plaintiff in a calculated effort to hurt her and her family.

14. Plaintiff has never done anything to hurt, or cause harm to, Stern or his family. Rather, Plaintiff has always been a good friend to Stern and endeavored to help him and treated him with kindness and respect and has even loaned him money.

15. Sometime in or around the Fall of 2014, Stern hired Plaintiff's husband to defend him in a lawsuit Stern's former psychologist filed to collect money from Stern's for months of Stern's unpaid treatment.

16. On June 11, 2015, Stern travelled from New Jersey to San Antonio, Texas to discuss with Plaintiff's husband, *inter alia*, the possibility of forming a partnership for the practice of law and he stayed as a guest in Plaintiff's home for the entirety of his San Antonio trip.

17. On June 15, 2015, Stern and Plaintiff's husband orally agreed to form a partnership for the practice of law, but the terms of their agreement were never reduced to writing.

18. In 2016, Stern became addicted to prescription painkillers for a period; it is unknown if Stern currently suffers from any addiction problems.

19. Beginning in approximately Summer 2019, Plaintiff's husband and others in his law firm began noticing Stern's rapidly deteriorating mental health and erratic behavior, which worsened throughout 2020.

20. By May 2020, it became clear to Plaintiff's husband and every person in his law firm that Stern's mental health had deteriorated to a point where he was incapable of remembering simple facts and events, he was barely working, and firm personnel, clients, adversaries, and others were experiencing great difficultly communicating with Stern, and his anger management problems were quickly spiraling out of control to the point his conduct had become consistently more abusive than ever to the firm's personnel.

21. In July 2020, Plaintiff's husband and every person in the firm began to experience the full extent of Stern's deteriorating mental health and the negative financial and emotional toll it was causing everyone; he also began mishandling client property, client money, allowing third-parties unfettered access to, and control over, the firm's property, equipment, client monies and property, and he engaged in other conduct inconsistent with an attorney's professional and ethical responsibilities to the firm's clients, employees, and partners.

22. By July 2020, Stern was under severe mental distress and refused the urging by Plaintiff's husband to resume psychiatric treatment; he had lost touch with reality and his abusive conduct towards Plaintiff's husband and the firm's personnel was destroying the firm.

23. Consequently, on July 21, 2020, Plaintiff's husband and every person who worked for his law firm engaged Stern in a telephone conference in which they informed him of their intent to discontinue their professional relationship with him and why it was necessary for them to do so. During this meeting, they expressed to Stern their sincerest desire and plan to amicably wind-up the firm's operations and for everyone to work as hard as possible for the firm's collective good and to help Stern so he and everyone else could exit the firm by the year's end and be financially stronger and emotionally happier.

24. During the July 21, 2020 meeting, Stern became abusive and angry towards Plaintiff's husband and others on the call.

25. After the July 21, 2020 meeting, Stern embarked on a private vendetta to harm Plaintiff's husband by engaging in a deliberate campaign to defame Plaintiff and intentionally subject her to extreme psychological abuse as a means to hurt her and her family.

26. Beginning on or about July 21, 2020, and continuing months thereafter, Stern told the firm's personnel that Plaintiff personally defrauded and had "stolen money" from Stern and his law firm by, *inter alia*, regularly using the firm's credit card and banking accounts without permission to lavish herself with expensive gifts, shopping trips and vacations; he also told them Plaintiff is financially irresponsible, unethical, and morally bankrupt. Stern's foregoing statements are patently untrue ("Defamatory Statements").

27. Stern's Defamatory Statements referred to Plaintiff and her husband by name.

28. Stern communicated his Defamatory Statements to Plaintiff's friends and neighbors, and Plaintiff's husband's colleagues and friends, some who live in San Antonio, Texas.

29. Stern also communicated his Defamatory Statements to Plaintiff's friends in other states, including her mother-in-law's former neighbor.

30. Plaintiff is informed and believes, and on that basis alleges, that Stern published his Defamatory Statements about Plaintiff to the foregoing persons orally and in writing, and each of those persons understood his Defamatory Statements to mean Plaintiff committed crimes of moral turpitude and other acts of dishonesty including, but not limited to, theft, embezzlement, and conversion, and that she was a financially irresponsible, unethical, and morally bankrupt person.

31. Stern published his Defamatory Statements with actual malice, and/or reckless disregard for the truth, because he knew or should have known when he published them that they were patently false, but he made them for the sole purpose of injuring Plaintiff's reputation and exposing her to public hatred, humiliation, embarrassment, contempt, ridicule, and financial injury to hurt her, and her family, and to carry out a vendetta against Plaintiff's husband.

## IV.     CAUSES OF ACTION AGAINST DEFENDANT

### A. *Defamation & Defamation Per Se.*

32.    As stated above, Stern published his Defamatory Statements beginning on or about July 21, 2020, and continuing thereafter to present, by oral and written communications asserting as fact that Plaintiff committed crimes of moral turpitude and other acts of dishonesty including, but not limited to, theft, embezzlement, and conversion, and that she was a financially irresponsible, unethical, and morally bankrupt person.

33.    Stern's Defamatory Statements referred to Plaintiff and her husband by name.

34.    Stern's Defamatory Statements were defamatory to Plaintiff and he published them with actual malice because he knew they were patently untrue each time he made them.

35.    Stern is strictly liable to Plaintiff each time his Defamatory Statements were published and republished.

### B. *Libel Per Se.*

36.    Stern published his Defamatory Statements on or about July 21, 2020, and continuing to present, by written communications asserting as fact that Plaintiff committed crimes of moral turpitude and other acts of dishonesty including, but not limited to, theft, embezzlement, and conversion, and that she is a financially irresponsible, unethical, and morally bankrupt person.

37.    Stern's written Defamatory Statements are libel *per se* as defined by Texas Civil Practice and Remedies Code § 73.001 because they injured Plaintiff's reputation and exposed her to public hatred, humiliation, embarrassment, contempt, ridicule, and financial injury.

38.    Stern's written Defamatory Statements are libel *per se* as defined by the Texas Civil Practice and Remedies Code § 73.001 because Stern's statement(s) impeached Plaintiff's honesty, integrity, virtue, and reputation thereby exposing her to public hatred, humiliation,

embarrassment, contempt, ridicule, and financial injury.

39. Stern published his Defamatory Statements with actual malice, and/or reckless disregard for the truth, because he knew or should have known when he published them that they were patently false but, he made them solely to injure Plaintiff's reputation and expose her to public hatred, humiliation, embarrassment, contempt, ridicule, and financial injury.

40. Stern's Defamatory Statements require no proof of their injurious character because they are obviously hurtful to Plaintiff causing damage to her reputation thereby exposing her to public hatred, humiliation, embarrassment, contempt, ridicule, and financial injury.

### C. Request for Correction and Redaction.

41. Plaintiff previously requested Stern correct, clarify, and retract his Defamatory Statements (*Exhibit A*), but he refused to do so, thus creating Plaintiff's need to file this lawsuit.

### D. False Light.

42. Stern gave publicity to his Defamatory Statements.

43. Stern's Defamatory Statements placed Plaintiff in a false light before the public.

44. The false light Stern placed Plaintiff in is highly offensive to reasonable persons.

45. At all times relevant to this lawsuit, Stern acted with intentionally, with knowledge and actual malice, as to the falsity of his Defamatory Statements that he publicized and the false light in which he intended to place Plaintiff.

46. Stern's conduct invaded Plaintiff's privacy and caused her to suffer damages.

### E. Intentional Infliction of Emotional Distress.

47. Plaintiff brings this lawsuit against Stern in her individual capacity.

48. Stern's conduct in publishing his Defamatory Statements and taunting Plaintiff was

intentional and reckless, and specifically designed to inflict the maximum possible psychological torture and cruelty on Plaintiff even though he knew she had done nothing to deserve it.

49. Stern's conduct and Defamatory Statements are extreme and outrageous.

50. Stern's conduct proximately caused Plaintiff to suffer extreme mental anguish, anxiety, upset, public humiliation, embarrassment, and emotional distress.

51. Plaintiff's extreme mental anguish, anxiety, upset, public humiliation, embarrassment, and emotional distress cannot be remedied by any other cause of action.

## V.   DAMAGES.

52. As a direct and proximate result of Stern's conduct and Defamatory Statements, Plaintiff's reputation has been severely injured and caused her to suffer extreme mental anguish, anxiety, upset, public humiliation, embarrassment, and emotional distress.

53. Plaintiff seeks actual, compensatory, and punitive damages as follows:

   (A) Actual damages exceeding $1,000,000.00, which is within the jurisdictional limits of the Court;

   (B) Exemplary damages against Stern in a sum determined by the trier of fact;

   (C) Pre-judgment interest (from the date of injury through the date of judgment) at the maximum rate allowed by law;

   (D) Post-judgment interest at the maximum rate allowed by law;

   (E) Attorneys' fees, costs of court, expert expenses and all other litigation costs as allowed by law; and

   (F) Such further relief Plaintiff is entitled to at law or in equity.

## VI.   JURY DEMAND.

54. Plaintiff asserts her right under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## VII.   PRAYER

55.     Plaintiff prays that Defendant, Philip D. Stern, be cited to appear and answer for his tortious conduct, that her case be set for trial, and that she recover a judgment of and from Defendant for damages in such amount as the evidence may show and the jury may determine is proper, in addition to pre-judgment interest, post-judgment interest, costs, and all other and further relief to which Plaintiff may show herself to be justly entitled.

Respectfully submitted,

*s/ Andrew T. Thomasson*

Dated:  July 20, 2021

Andrew T. Thomasson (NJ Bar No. 048362011)
THOMASSON PLLC
350 Springfield Avenue, Suite 200
Summit, NJ 07901
Telephone: (973) 312-0774
Facsimile:  (973) 559-5579
E-Mail: Andrew@Thomassonpllc.com

Christopher C. Saldaña (CA Bar. No. 269456)
*Pro Hac Vice Pending*
SHEWRY & SALDAÑA LLP
402 West Broadway, Suite 950
San Diego, California 92101
Telephone: (619) 233-8824
Facsimile: (619) 233-1002
E-Mail: chris@shewrysaldanalaw.com

**ATTORNEYS FOR PLAINTIFF, REBECCA THOMASSON**