**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

|  |  |  |
|---|---|---|
| REBECCA THOMASSON, | § § § | |
| Plaintiff, | § § | |
| *vs.* | § § § | Civil Action No. 5:21-cv-00687-JKP-ESC |
| PHILIP D. STERN, | § § | |
| Defendant. | § § § | |

---

**ADVISORY RE: DEFENDANT'S STATUS REPORT**

---

Plaintiff, Rebecca Thomasson, respectfully submits this Advisory in response to the

"Status Report" [Dkt. No. 11] filed by Defendant, Philip D. Stern.

In Defendant's Status Report, he advises this "case is settled" and asks the Court to

administratively dismiss it. However, this case is *not* settled and, therefore, Mrs. Thomasson

respectfully requests the Court ignore Defendant's thinly disguised motion to administratively

dismiss her action. Additionally, by way of this Advisory Mrs. Thomasson is providing

Defendant notice of her intent to move for entry of default against him on November 12, 2021,

unless he files a responsive pleading beforehand.

As explained in Point I, *infra*, Mrs. Thomasson had every intention of honoring her

obligation under the Agreement (which Stern refers to as the "SA") to dismiss this action, but

Stern chose to breach the Agreement in several materials ways. She gave Defendant the courtesy

of allowing him extra time to cure his breaches of, and perform his obligations under, the

Agreement but he instead escalated his bad conduct making clear he refuses her accommodation.

Defendant's latest stunt was filing a "Status Report," without first disclosing his intention

to make such a filing even though he admits being in regular contact with Mrs. Thomasson's

counsel [*see, e.g., Appendix B*] who had even recently sent him an in a good faith effort to obtain clarification of his clearly confounding and shifting positions—Defendant waited until *after* he filed his Status Report to respond counsel's email and in his reply he discloses the filing. Status Report. Defendant's Status Report mischaracterizes and omits several key facts, which Mrs. Thomasson addresses in Point II, *infra*, to correct and clarify the Court's record.

***

Mrs. Thomasson now finds herself in this position because Defendant insisted on mingling his settlement of her claims with his settlement of different claims, in a different case, in a different state, in which she was not involved—then, he promptly breached the Agreement.

Every very promise in the Agreement is linked together and, therefore, if any party breaches the Agreement with respect to obligations owed to another party, the entire Agreement is breached as to *all* parties. Stern's breaches regarding his refusal to pay monies the Agreement obligated him to pay are clear. Mrs. Thomasson had a direct and community property interest in payment of all monies the Agreement required including under Tex. Fam. Code § 3.002 and 3.007(c). She previously asserted that interest. Stern's last-minute surprise refusal to pay monies the Agreement required him to pay has undermined Mrs. Thomasson's agreement to settle because of the link between her claims and the other parties. The Agreement treats each party as equals to the promises made, and a breach by one is a breach as to all.

Mrs. Thomasson allowed Defendant a modicum of time to remedy his breaches to her, and the other parties, and he refused. She is now moving forward.

## I.     THIS CASE IS NOT SETTLED AND SHOULD NOT BE DISMISSED.

On September 2, 2021, Mrs. Thomasson thought she settled her claims against Defendant because they signed a written agreement memorializing their settlement terms ("Agreement"). The Agreement, however, also settled separate, offsetting claims that were pending in New

Jersey state court between Defendant and Mrs. Thomasson's husband ("NJ Action"). Mrs.

Thomasson has neither been a party to the NJ Action nor appeared in it, but Defendant still

insisted the NJ Action be settled with this one and memorialized in *one* agreement. The

Agreement has different material terms, and venue provisions for their enforcement, regarding

Defendant's settlement with Mrs. Thomasson *and* his settlement with her husband.

      The Agreement's venue provision is two-fold. Regarding Defendant and Mr. Thomasson,

it provides that they:

> agree to submit to the jurisdiction of the <u>New Jersey state courts
> sitting in Union County</u> for the purposes of enforcing and/or
> adjudicating any dispute that may arise between them under this
> Agreement.

However, regarding Defendant and *Mrs.* Thomasson, the Agreement provides that they:

> agree to submit to the jurisdiction of the <u>federal court in the
> Western District of Texas</u> for the purposes of enforcing and/or
> adjudicating any dispute that may arise between them under this
> Agreement.

      Defendant 's Status Report fails to mention any venue provisions. Instead, he falsely

asserts he "served [his] motion on Plaintiff's counsel, Amy L. B. Ginsberg, Esq., who is admitted

in New Jersey," implying he provided Mrs. Thomasson due process to oppose any motion he

planned to file. But immediately after filing his Status Report, Defendant sent Mrs. Thomasson's

counsel an email asserting she "has no standing concerning the issues involved in determining

whether, per the SA, her case should be dismissed" and that she has "no basis to object" in the

NJ Action. [*Appendix B* (B-2)].

      Defendant understands the New Jersey court lacks personal jurisdiction over Mrs.

Thomasson because she has no contacts with that state, which is why he agreed *only* this Court

has jurisdiction to adjudicate "any dispute that may arise between them under th[e] Agreement."

He also knows he materially breached his Agreement by asking any court other than *this* Court to

"adjudicate[e] any dispute that may arise between them under th[e] Agreement."

Defendant omits mention that he breached other material Agreement terms within days of signing it; he materially breached provisions specific to Mrs. Thomasson *and* breached other provisions specific to her husband and his former law firm, the most troubling of which is Defendant's refusal to pay tens of thousands of dollars the Agreement requires him to pay. Those breaches are no small issue given Defendant's chronic history of financial problems, refusing to pay creditors, and because he informed the New Jersey court, the Receiver, and parties he is destitute. His payment breaches are also troubling given his disturbing pattern, as reflected on the NJ Action's docket, of disobeying several orders issued by the New Jersey court and Receiver.

Defendant's Status Report asserts that "[o]n November 19, 2021, the New Jersey court will hear my motion for an order directing the dismissal of both actions" [Dkt. No. 11 (pg. 2)], but he omits mention that Mr. Thomasson is the only party who filed a Motion to Enforce the Agreement and it is the only pending motion to be decided November 19, 2021.

***

If Mr. Thomasson's Motion to Enforce is granted in the NJ Action, Mrs. Thomasson plans to file an Amended Complaint for both sets of breaches, but if that court determines the Agreement is unenforceable between Defendant and Mr. Thomasson, she instead may elect to either: *(i)* amend her complaint and only sue for breach of contract; or *(ii)* abandon the Agreement and proceed with her defamation action. Either way, resolving Mr. Thomasson's pending motion in the NJ Action provides Mrs. Thomasson a clearer path on how to proceed here and will save this Court's limited resources in the process.

## II.      DEFENDANT'S MISCHARACTERIZATIONS & OMISSIONS.

Defendant's Status Report begins by truthfully advertising he is "admitted to practice in this Court" but he concludes it by falsely: *(i)* disputing he was personally served with process; and *(ii)* informing the Court he "filed [his] Notice of Appearance and this letter to ... "avoid Plaintiff filing for a default judgment without notice to [him]." More than a quarter century ago,

the judges in this District adopted the Texas Lawyer's Creed and commended it for observance to all lawyers practicing in this District. [*See,* Appendix M to Local Rules].

Regarding Lawyer-to-Lawyer conduct, the Creed provides that, "A lawyer owes to opposing counsel, in the conduct of legal transactions and the pursuit of litigation, courtesy, candor, cooperation, and scrupulous observance of all agreements and mutual understandings. Ill feelings between clients shall not influence a lawyer's conduct, attitude, or demeanor toward opposing counsel." [*Appendix M-3* (§ III)]. Importantly, the Creed provides a Lawyer "will not take advantage, by causing any default or dismissal to be rendered, when I know the identity of an opposing counsel, without first inquiring about that counsel's intention to proceed."

Mrs. Thomasson's attorneys follow the Creed and, therefore, would never have filed "for a default judgment without notice to [Defendant]" and Defendant knew this because: *(i)* he has been in default since September 18, 2021, but Mrs. Thomasson never sought to enter default; and *(ii)* on November 6, 2021, her attorney sent him an email and its very first sentence states:

> I have stayed out of this fray in an attempt, though apparently futile, to allow you and Andy to completely resolve your differences before taking any further substantive action in the federal case.

[*Appendix B* (pg. 3)]. The email further stated,

> I see that you have submitted a proposed order to Judge Mega requesting that an order be entered finding you have performed all terms and conditions of the agreement and that the Texas case should be dismissed on that basis. I write for clarification on your request.

*Id.* Defendant could have replied to the email and asked to stay this action or, alternatively, requested filing a Joint Advisory, but instead he saw an opportunity to litter the Court's docket with a self-serving "Status Report" and only afterwards, replied to the email. [*Appendix B*]. The Creed expects better from attorneys who, like Defendant, are admitted to practice in this Court.

Defendant also claims he was not served with process, but the Court's docket reflects he

was served by substitute service at his business. [Dkt. No. 9]. He fails to mention substitute service was necessary because he actively evaded service of process. [*Appendix C*].

Last, Defendant states "This case arose from the breakup of Stern Thomasson LLP ("Firm") and was filed in response to a year-old New Jersey case [he] brought against Andrew T. Thomasson." He is wrong.

This case arose from grossly defamatory statements Defendant deliberately communicated to third parties about Mrs. Thomasson, an innocent party, who has nothing to do with him or the law firm singlehandedly wrecked. She offered him an opportunity to retract his defamatory statements on December 3, 2020, but he ignored her request and, therefore, she filed this lawsuit. [Dkt. No. 1, ¶41 (Exh. A)]. In sum, lawsuit arose from Defendant's intentional conduct which he intended would hurt Mrs. Thomasson and nothing more.

Respectfully submitted,

Dated: November 10, 2021

s/ Amy L.B. Ginsburg

Amy L.B. Ginsburg (SBN 24107506)
GINSBURG LAW GROUP, P.C.
196 West Ashland Street
Doylestown, PA 18901
Telephone: (855) 978-6564
Facsimile: (855) 777-0403
E-Mail: ginsburglawgroup@gmail.com

Christopher C. Saldaña (*Pro Hac Vice*)
SHEWRY & SALDAÑA LLP
402 West Broadway, Suite 950
San Diego, California 92101
Telephone: (619) 233-8824
Facsimile: (619) 233-1002
E-Mail: chris@shewrysaldanalaw.com

**ATTORNEYS FOR REBECCA THOMASSON**

-7-

## CERTIFICATE OF SERVICE

I, Amy L.B. Ginsburg, hereby certify that on November 10, 2021, I served a copy of the foregoing on the Defendant, Philip D. Stern, by filing it with the Court's CM/ECF System.

*s/ Amy L.B. Ginsburg*
AMY L.B. GINSBURG
