UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| REBECCA THOMASSON, | § § § § | |
| Plaintiff, | § § | |
| vs. | § § | Civil Action No. 5:21-cv-00687-JKP-ESC |
| PHILIP D. STERN, | § § | |
| Defendant. | § § § | |

## APPENDIX

| | | |
|---|---|---|
| **A** | …………………………………………….. | Letter to New Jersey Court in Support of Receiver's Motion for Contempt Against Philip D. Stern |
| **B** | …………………………………………….. | Emails with Philip D. Stern dated November 6 & 8, 2021 |
| **C** | …………………………………………….. | Process Server Report re Philip D. Stern Intentionally Evading Service of Process |

# DAY PITNEY LLP

BOSTON   CONNECTICUT   FLORIDA   NEW JERSEY   NEW YORK   WASHINGTON, DC

MICHAEL K. FUREY
Attorney at Law

One Jefferson Road
Parsippany, NJ 07054-2891
T: (973) 966-8110 F: (973) 995-4972
mfurey@daypitney.com

August 12, 2021

**VIA ECOURTS**
Hon. Robert J. Mega
Union County Court House
Two Broad Street
Elizabeth, New Jersey 07207

Re:   Stern v Thomasson
      Docket No. UNN-C-106-20

Dear Judge Mega:

Andrew T. Thomasson submits this Letter in support of the Report of Gary Roth, Esq., the Receiver for Stern Thomasson, LLC (the "Firm" or "ST"). A conference call is scheduled with You on August 16 at 9:30am.

The Receiver's application seeks an Order compelling Philip Stern to: (1) pay by a date certain the attorneys' fees he charged the Firm to litigate his suit against the Firm and Mr. Thomasson as well as the accruing interest and other charges; (2) provide the Receiver and Thomasson with copies of the Investigator's Report and Committee Decision resulting from the grievance filed by Mr. Stern's clients, the Pepes; (3) pay the Receiver's July 2021 invoice by a date certain; (4) pay a daily penalty if he fails to comply with Nos. 1-3; and (5) pay the Receiver's fees in seeking Stern's compliance with Nos. 1-3. Mr. Thomasson also requests that Mr. Stern's Complaint be dismissed with prejudice if he does not comply with the Court's Order.

Mr. Thomasson will not repeat the presentation of Mr. Roth, who has ably explained the basis for his application. There are a few additional points we would bring to Your attention.

109475288.2

**A-1**

**DAY PITNEY** LLP

**Appendix A**

Hon. Robert Mega
August 12, 2021
Page 2

1. The Receiver was kind to Mr. Stern in his description of what has occurred during the receivership. Every courtesy has been extended to Stern over the past nine months as the parties have attempted to wind up ST. Unfortunately, Stern refuses to reciprocate and he has repeatedly ignored the Receiver's directives; *e.g.* Stern's submission to the accountants auditing the Firm's records had to be revised <u>six</u> times over two months before the Receiver could submit it to the auditor because he refused to follow the Receiver's instructions, including the sixth and final revisions by Mr. Roth himself. As a result, the litigation costs are far higher than necessary (or justified by the dispute) because the Receiver and Thomasson are forced to address unnecessary issues over and over again.

2. Regarding Mr. Stern's unpaid $40,000 charge for his attorneys' fees, we note: (a) he has had almost 9 months to pay the fees he secretly caused the Firm to pay while Thomasson was forced to use his family's savings to pay his attorneys; (b) aside from Stern's $8,000 January payment, he has only been willing to pay the minimum monthly amount, or slightly more, and has made no appreciable progress in reducing the debt's principal; and (c) as the Receiver noted, Stern admits the Court's Orders gave the Receiver discretion to decide the terms of Stern's repayment, but he now refuses to obey the Receiver's repayment order because it requires him to pay off his debt. We do not believe Stern intends to fully pay his attorneys' fee charge.

3. Regarding Stern's production of his ethics investigation report and decision: (a) he baited Thomasson and the Receiver into believing he would timely produce his report and decision, and only <u>after</u> Thomasson obeyed the Receiver's Order and timely

109475288.2

**A-2**

**DAY PITNEY** LLP

Hon. Robert Mega
August 12, 2021
Page 3

provided his report to Stern did Stern object and refuse to comply; (b) the grievants, were Stern's clients—Thomasson's involvement was minimal and limited to a little more than one hour when Stern was unavailable; and (c) since the outset of the ethics proceeding, Stern has shared his grievance materials with Thomasson, the Firm, and third-parties, and Thomasson did likewise, to assist the Firm and each other.

4. If Stern wants to proceed with his litigation, he must pay his share of the Court-ordered Receiver fees. After all, Stern filed this lawsuit and sought the Receiver's appointment but he has not paid because he does not like Mr. Roth's decisions.

5. When Stern previously refused to pay the Receiver's fees, the Court ordered the Firm to pay his fees and reimburse Thomasson for the two months of timely payments he had made. This is not practical today because the Firm already cannot pay its creditors.

6. Thomasson is substantially concerned that Stern will still refuse to pay his $40,000 fee charge, the Receiver, or provide his grievance materials even if You order him to do so, and even if faced with penalties, because the Receiver and Thomasson lack any means to enforce the Order. As a result, Mr. Thomasson requests that in addition to any penalty You order, that Stern's Complaint be dismissed with prejudice if he fails to comply with the Order. Without such an incentive, Stern will disregard the Order.

109475288.2

**A-3**

Case 5:21-cv-00687-JKP-ESC Document 13-1 Filed 11/10/21 Page 5 of 9
UNN-G-000106-20 08/13/2021 10:02:13 AM Pg 4 of 4 Trans ID: CHC2021157683

Appendix A

**DAY PITNEY** LLP

Hon. Robert Mega
August 12, 2021
Page 4

  Mr. Thomasson respectfully requests You grant the relief sought by the Receiver, as supplemented by this Letter.

                   Respectfully submitted,

                   Michael K. Furey

cc:  Gary Roth, Esq. (via ecourts)
    Bernadette Condon, Esq. (via ecourts)

109475288.2

A-4

**Appendix B**

**Christopher C. Saldana**

---

**From:** Christopher Saldana <chris@shewrysaldanalaw.com>
**Date:** November 8, 2021 at 7:44:45 PM PST
**To:** "Stern, Philip D." <pstern@philipstern.com>
**Cc:** ginsburglawgroup@gmail.com
**Subject: Re: Stern v Thomasson Docket # UNN-C-106-20**

Phil,

I gave you two-and-a-half days and you provide me with 21 and a half hours? Can't do it, sorry, I have a full day tomorrow. I can provide you with a response on Wednesday. Needless to say I disagree with your analysis on several points below. That will have to suffice for now. I had asked for authority, but you haven't provided any. So I'm not sure I'm really in any position to say anything different than what I've already stated; but I'll try to do so on Wednesday.

Regarding why I copied the others on my email to you, you'll note it was in response to an email you copied to me which included the same folks. I had assumed you wanted it that way, but I'm happy to limit the individuals included here to those you have set forth above.

I'll take a look at your advisory to the court and respond accordingly as well.

Christopher C. Saldaña, Esq.
Shewry & Saldaña, LLP
402 West Broadway, Suite 950 • San Diego • CA • 92101
Office: 619.233.8824
Fax: 619.233.1002
Email: chris@shewrysaldanalaw.com
Web: http://www.shewrysaldanalaw.com

This communication is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential, and exempt from disclosure under applicable laws, including (inter alia) 18 U.S.C. §§ 2510, et seq. If you received this communication in error, please notify the sender immediately by telephone, remove this communication from your network and hard drive, and destroy any paper copies that have been generated.

# Appendix B

**On Nov 8, 2021, at 7:17 PM, Stern, Philip D. <pstern@philipstern.com> wrote:**

Chris,

This is a <u>*confidential communication*</u> made in response to a request to provide information for the purpose of resolving potential disputed issues. Therefore, <u>the admissibility of this email</u> <u>is subject to FRE 408 and comparable state court rules</u>.

I now respond to your email from the bottom up.

**FIRST**, I accept your representation to be "bona-fide requests for information so that I can understand what otherwise seems to be an invitation to further litigation and generation of potentially shifting fees and costs." Indeed, that is why Rule 408 applies and I have only sent this to you with a copy to Ms. Ginsberg despite your email being copied to Messrs. Furey and Roth. Moreover, I have entered my appearance and sent a status report to Judge Chestney so that the Court is informed as to the status of the settlement.

You have misinterpreted my motion in the New Jersey action because you mistakenly see it as an invitation to further litigation. To the contrary, based on my reading of the Settlement Agreement (SA), and what I understand Mr. Thomasson's position to be, my motion will resolve matters expeditiously without tossing out threats of fee-shifting. I particularly fail to see how anything in my motion negatively affects your client. Unless you can explain otherwise, your client has no standing concerning the issues involved in determining whether, per the SA, her case should be dismissed. Unless you can explain to me otherwise, your client has no legally cognizable interest in whether the SA conditions to dismissal are satisfied. She is obligated to dismiss when the conditions are satisfied and has the right to refuse to dismiss until they are satisfied—but she has no interest in their satisfaction and has no basis to object to Judge Mega's determination as to whether they are satisfied. If you disagree, please provide me with an explanation identifying what interest your client has in the SA's conditions to dismissal. Unless you provide me an explanation "in short order," I will rely on your client having no interest in the satisfaction of the conditions to dismissal of her case.

**SECOND**, I haven't a clue as to what you are saying about Rooker-Feldman and, therefore, am not able to respond. Unless you provide me an explanation "in short order," I will rely on it being withdrawn and your client will not raise this Rooker-Feldman issue in the future.

**THIRD**, you view my request to Judge Mega as "a further breach" of the SA. Your phrase (a) *expresses* that, by my asking Judge Mega to direct the dismissal of your client's case, I breached the SA, and (b) *implies* that I previously breached one or more duties I owe to your client under the SA. Therefore:

> A. As explain below in FOURTH, there is no breach from my submission to Judge Mega.
> B. Please identify all previous breaches. Please provide me with specificity "in short order" as to each previous breach of a duty under the SA which your client contends I owed her but which I failed to fulfill. I will rely on there being no previous breaches except those identified by you "in short order."

**FOURTH**, I believe you have misread the SA as containing an exclusive venue provision. It does not. In SA ¶23, your client and I consented to the jurisdiction of a specific court but there is no exclusivity. Any court which has subject matter and personal jurisdiction may decide a dispute between me and your client relating to the SA. Therefore, I have not breached the SA by asking Judge Mega to determine whether to direct dismissal of your client's case.

**FIFTH**, I could not disagree that Due Process must be provided to all litigants. There must exist "minimum contacts" sufficient for specific jurisdiction over a litigant who receives notice and an opportunity to be heard. Rebecca Thomasson has received notice (I served her counsel with the motion) and, as Ms. Ginsburg is admitted to New Jersey courts, your client has an opportunity to be heard. Finally, there exist minimum contacts arising from the facts and circumstances in which your client's case was settled under the SA (including your participation with her in the September 2 mediation hosted by the receiver) with regard to issues between me and your client arising from the SA.

**LAST**, just to be clear, I consider "short order" to mean **by 5PM (Pacific) on Tuesday, November 9, 2021.**

*Philip D. Stern*
(973) 202-7805


On Sat, Nov 6, 2021 at 5:39 PM Christopher Saldana <chris@shewrysaldanalaw.com> wrote:

Hi Phil:

I have stayed out of this fray in an attempt, though apparently futile, to allow you and Andy to completely resolve your differences before taking any further substantive action in the federal case. I see that you have submitted a proposed order to Judge Mega requesting that an order be entered finding you have performed all terms and conditions of the agreement and that the Texas case should be dismissed on that basis. I write for clarification on your request.

As I understand it, Rebecca is not a party to your case in New Jersey state court. As you know, it is hornbook law that principles of due process preclude an award of relief as against her, as you request, because she has not been summoned to the action and because the Court has no other form of jurisdiction over her. Furthermore, recall that you executed with her a settlement agreement that read, in relevant part:

"Stern and Rebecca agree to submit to the jurisdiction of the federal court in the Western District of Texas for the purposes of enforcing and/or adjudicating any dispute that may arise between them under this Agreement."

(Settlement agreement, pg. 13, para. 23). Based upon (bot not limited to) these two facts, we view your request as being wholly without basis and, in fact, a further breach of the same. If you allow me the favor, would you mind explaining how the New Jersey court has jurisdiction to enter such an order vis-a-vis my client and, moreover, why such an order would be enforceable as against Rebecca in the federal court action that was pending prior to your settlement agreement with her? As I understand it, *Rooker-Feldman* also clearly would not apply because of the pre-agreement pendency of the federal action. Of course, if met with contrary authority, I am willing to admit I am incorrect if that is the case.

Please do not interpret my requests as antagonistic, they are *bona-fide* requests for information so that I can understand what otherwise seems to be an invitation to further litigation and generation of potentially shifting fees and costs. It is generally my practice to avoid that when possible, hence my request. I look forward to hearing from you in short order, though be advised I will be unavailable to balance of the afternoon/evening. Thanks Phil.

Chris

Guaranteed Subpoena Service, Inc.
P.O. Box 2248 - Union, New Jersey 07083
(908) 687-0056   (800) 672-1952
Fax: (908) 688-0885 Tax ID 22-2393485
www.Served.com

YOUR PROCESS **20210826150718** Was

AMY L.B. GINSBURG ESQ.
196 WEST ASHLAND STREET
DOYLESTOWN, PA 18901

**NOT SERVED!**

NOT Served Date/Time: 8/27/2021 12:35 PM

Visit us at www.SERVED.com to get the latest status of your process. Your FirmID is: TH031342

NOT Served Upon:   **PHILIP D. STERN**
At HOME :   **21 GIRARD PLACE  MAPLEWOOD NJ 07040**

In the Case/Docket:   **5 21 CV 00687 JKP ESC**   Claim:
Plaintiff:   **REBECCA THOMASSON**
Defendant:   **PHILIP D. STERN**
Attorney:   **AMY L.B. GINSBURG ESQ.**  Phone: **855-978-6564**  Fax: **855-777-0043**
            Email:  **GINSBURGLAWGROUP.COM**
Firm:   **GINSBURG LAWG ROUP, P.C.**
        **196 WEST ASHLAND STREET, DOYLESTOWN, PA 18901**

**VIDEO OF OUR ATTEMPTS ARE FREQUENTLY AVAILABLE AT A REASONABLE COST
EFFECTIVE 8/6/18 - WHEN AND WHERE AVAILABLE**

## AUTHORIZATION FOR ADVANCED SEARCH

**Note: all investigative work is performed by Spartan Detective Agency, NJ License 2392**

**To order search check desired box, sign authorization and fax back to us immediately at 888-224-4405**
*PLEASE BE ADVISED THAT IF THE SOCIAL SECURITY NUMBER OR TAX ID IS NEEDED FOR A SEARCH THERE WILL BE A $60/$150 FEE.

[ ] Social Security Search $60 find or no find

[ ] Skip Search* - $75.00 - no find, no pay

[ ] Postal Forwarding $60 anywhere in U.S

[ ] DMV - MVC $60 NJ only, $110 other states

[ ] VIDEO EVIDENCE $79.99 if available

**Sales Tax of 6.625% Applies**

[ X ]* Affidavit of Due Diligence $40 NJ only, $55 other states

[ ] Corporate Search - $85 anywhere in U.S.

[ ] **(SDA)** Stake Out/Inv $125/hr | **(GSS)** - Wait Time $100/hr (NJ) $150/hr Out of State **(circle one)** - Auth Hours ___

_____   ___/___/_____
AUTHORIZING SIGNATURE                 DATE

PLEASE FAX SIGNED AUTHORIZATION TO (888) 224-4405 OR CALL (877) SDA-2009 TO REACH **SPARTAN DETECTIVE AGENCY**
OR CALL (800) 672-1952 TO REACH **GUARANTEED SUBPOENA SERVICE**
We were unable to serve your process for the following reason:  **ENTITY EVADING**
**SERVER MADE MULTIPLE ATTEMPTS AT THE GIVEN MAPLEWOOD, NJ ADDRESS WHERE RESIDENTS WERE HOME BUT REFUSED TO OPEN THE DOOR. UNABLE TO EFFECTUATE SERVICE.**

***THIS FORM DOES NOT CONSTITUTE A LEGAL DUE DILIGENCE AFFIDAVIT***
The specific reasons for failure to serve are available from us in an Affidavit Form, Signed and Notarized for $40 in NJ and $55 in all other states.
Check the box above and return for the affidavit.