## SETTLEMENT AGREEMENT

This Settlement Agreement dated as of September 2, 2021 ("Effective Date") is entered into between Andrew T. Thomasson ("Thomasson"), having an address at 20 Champion Trail, San Antonio, Texas 78258, Philip D. Stern ("Stern"), having an address at 21 Girard Place, Maplewood, New Jersey, Stern Thomasson LLP ("the Firm"), having an address of 150 Morris Avenue, Suite 205, Springfield, New Jersey(collectively the "Parties") and Rebecca Thomasson ("Rebecca"), having an address at 20 Champion Trail, San Antonio, Texas (the "Agreement").

**WHEREAS**, Stern and Thomasson are partners in the Firm with each owning a 50% interest and no one else has ever owned any interest in the Firm; and

**WHEREAS**, Stern commenced an action entitled Stern v. Thomasson, *et al.* in the Superior Court of New Jersey, Docket No. UNN-C-106-20 (the "Action"); and

**WHEREAS**, the Court appointed Gary Roth, Esq., as the Special Fiscal Agent and later, as the Custodial Receiver for the Firm (the "Receiver") and ordered that each of the Parties was responsible for one–half of the Receiver's fees and expenses; and

**WHEREAS**, Thomasson and Stern separated their practices as of January 22, 2021 (the "Separation Date") and certain clients of the Firm elected to have Thomasson through Thomasson PLLC or Stern through the Kim Law Firm LLC, continue to represent them in cases or matters where the Firm had previously represented them ("Firm Cases") going forward; and

**WHEREAS**, the Receiver retained EisnerAmper to audit certain financial records of the Firm and directed each of the Parties to pay one-half of EisnerAmper's initial retainer of $5,000 towards its fees; and

**WHEREAS**, the Firm has terminated its Cash Balance Plan ("CBP") and 401K and Profit Sharing Plan ("401K Plan");

**WHEREAS,** Rebecca filed a lawsuit against Stern in the United States District Court for the Western District of Texas under Docket No. 5:21-cv-00687 ("District Court Action"); and

**WHEREAS**, Stern and Thomasson have decided to enter into this Agreement to settle their dispute and dismiss the Action; and

**WHEREAS**, Stern and Rebecca have decided to enter into this Agreement to settle their dispute and dismiss the District Court Action.

**NOW, THEREFORE**, in consideration of the mutual promises, agreements and other consideration set forth herein, the Parties and Rebecca **AGREE** as follows:

**EXHIBIT 1**

1. Rebecca shall file a Notice of Dismissal with prejudice to dismiss the District Court Action in accordance with Paragraph 20. In connection with the resolution of the District Court Action: Rebecca represents that various people have informed her that Stern made certain statements to them about her use of the Firm's credit card ("Statements"), which Rebecca deemed to be defamatory, caused her to request that he retract those Statements, and after Stern did not retract these Statements, she filed the District Court Action; Stern denies making the Statements and any statements Stern made were concerning Thomasson's use of the Firm's credit cards and were not in any way intended to impugn Rebecca; therefore, Stern regrets any harm or inconvenience the Statements may have caused Rebecca and her children and, to the extent that anyone misconstrued these Statements to disparage Rebecca, he hereby retracts and disavows them.

2. Subject only to the terms of this Agreement and upon the dismissal of the Action and District Court Action, Stern shall convey, transfer and assign his entire interest in the Firm, legal, equitable and beneficial, to Thomasson, and to release any claim he might have to income from the Firm in 2021 and assigns it to Thomasson. Stern agrees he will not dispute the Firm's accrued income and incurred expenses as of the Effective Date and will not object to, and he will sign, the Firm's 2020 tax returns prepared by Curtis Williams provided (A) the Firm attributes the following Firm business expenditures incurred in 2020 as income to Thomasson: (a) gifts to others; (b) cellular plan; (c) coffee at his Texas office; (d) vehicle expenses except for car washes; (e) charges at Costco, Wal-Mart, and Staples; (f) other itemized charges identified by Stern that he claims he does not recognize; and (g) attorneys' fees incurred defending the Pepe grievance; and

**EXHIBIT 1**

(B) Stern's $40,000 charge to the Firm's credit card on November 18, 2020 shall be treated as a business expense; and (C) political contributions shall not be treated as a business expense. By agreeing these expenditures are income, Thomasson is not agreeing he acted improperly in any way. Thomasson agrees that the Firm's 2021 income tax returns will not report any income for Stern and Stern hereby confirms that he has no right to any income with respect to the Firm in 2021 and assigns it to Thomasson. Thomasson confirms that Stern has no obligations with respect to Firm expenses incurred after the Separation Date (except to the extent any payments by Stern under this Agreement may be considered a Firm expense and without affecting his obligations under Paragraphs 5 and 6). As of the Effective Date, Thomasson shall owe no duties towards Stern regarding the Firm or its management and possible dissolution including, but not limited to, the need to disclose information to Stern, except that Stern's written consent is required to file any tax returns (including any amended tax returns) covering any period prior to 2021 to the extent that any such filings would require Stern to amend his personal income tax returns and cause Stern any negative tax consequences. Stern shall execute whatever documents and take whatever other action is necessary to convey his interest in the Firm to Thomasson. The Parties agree that as of the Effective Date, a receiver is no longer necessary for the Firm and Stern consents to Thomasson seeking an order by the Court discharging the Receiver of his responsibilities. Within three (3) business days of the Effective Date, Thomasson shall change the Firm's name to remove any reference to Stern, including filing the appropriate notice with the State of New Jersey. Stern agrees after the Effective Date, to forward to Thomasson within two (2) business days of receipt via email any Firm mail, written or other communication he receives directed to the Firm,

**EXHIBIT 1**

Thomasson, Stern or any Firm related person and/or issues. Thomasson agrees after the Effective Date, to forward to Stern within two (2) business days of receipt via email any mail directed to Stern. Notwithstanding anything in this Agreement to the contrary, Thomasson shall maintain and preserve all Firm records which exist as of the Effective Date including but not limited to the Firm's client case files, personnel files, financial documents, emails, and electronically stored information in accordance with N.J. Court Rule 1:21-6.

3.     Thomasson and the Firm shall assume all liabilities Stern may have arising solely from his status and actions as a partner of the Firm prior to the Separation Date. Such liabilities include but are not limited to any claims arising from the management or operations of the Firm, from personally guaranteeing any Firm liability, and from the Firm's provision of legal services. The Firm shall maintain professional liability insurance with at least the same coverage as the Firm's current policy which shall cover Stern for acts prior to the Separation Date. If the Firm transfers any assets to Thomasson PLLC, Stern may satisfy any judgment he obtains against the Firm for indemnity that is not otherwise satisfied, from the assets of Thomasson PLLC to the extent that the Firm has transferred assets to Thomasson PLLC without receiving adequate consideration in return. Notwithstanding the foregoing, such liabilities shall not include (a) grievances against Stern for ethical violations, (b) payment of punitive damages, (c) claims by the Kim Law Firm LLC or Yongmoon Kim (collectively "Kim"), (d) claims by Stern's relatives, either through blood or marriage against Stern, and (e) any obligations under the terms of this Agreement. Thomasson shall indemnify Stern for the liabilities as set forth in this Paragraph and defend any such claims that could give rise to these liabilities. Thomasson

4

**EXHIBIT 1**

shall control the defense and settlement of these claims, and Stern shall cooperate in good faith in their defense. Thomasson has sole discretion and control to decide whether, when, and how to settle any claims against Stern for which Thomasson is obligated under the Agreement to indemnify Stern, provided however that no settlement shall admit Stern's liability or wrongdoing.

4.  On or before September 10, 2021, Stern shall remove himself from, and his access to, all of the Firm's financial accounts and provide written evidence of same to Thomasson within two (2) business days.

5.  Stern shall pay off the Chase Credit Card in full within ten (10) days after the Cash Balance Plan funds are distributed in accordance with Paragraph 7 below and promptly provide Thomasson written documentation evidencing same.

6.  Stern and Thomasson shall each pay their respective one-half shares of the fees and expenses of EisnerAmper and the Receiver, within ten (10) days after the Cash Balance Plan funds are distributed in accordance with Paragraph 7 below and promptly provide Thomasson written documentation evidencing same; Stern shall also pay $5,500.00 towards the preparation of the Firm's 2020 partnership tax returns after he receives an invoice of at least $11,000, and Thomasson and the Firm will pay the remaining balance.

7.  Stern and Thomasson waive, discharge and release any claim they may individually have to benefits from the CBP in addition to the assets presently in the CBP. Stern and Thomasson shall each execute all requisite forms to effect the termination of the CBP and the distribution of its assets. Stern and Thomasson shall also obtain execution of all forms from their respective designated beneficiaries effecting a discharge

**EXHIBIT 1**

and release of any and all claims they may have to the CBP assets. The CBP's assets shall be divided between the Parties as follows: (a) Stern 60% of the CBP assets and (b) Thomasson 40% of the CBP assets, but the Parties agree they are each responsible for paying one-half of the excise tax relating to the distribution of the CBP assets and any additional fees charged by Nova or John Hancock related to the closure of the CBP and distributing its assets ("CBP Liability"). Upon distribution of the CBP assets pursuant to the direction(s) of the Parties, they shall each immediately place their share of the CBP Liability in escrow with Javerbaum Wurgaft, Attorney Trust Account. The escrow agent shall pay the CBP Liability by the due date or if the due date has passed by the time of the distribution, as soon as possible. The Parties are individually responsible for whatever early withdrawal tax may be assessed on their respective withdrawals of the CBP assets.

8. Stern agrees to cooperate in good faith with the efforts by Thomasson and the Firm to: (a) enforce and collect the Firm's liens in those Firm Cases that are still outstanding as of the Effective Date, except for the Firm cases that followed Stern to Kim ("Outstanding Firm Cases"); (b) enforce and collect on any other Firm matter where the Firm may be entitled to monies, including those Firm matters that followed Thomasson or Stern to their new firms and (c) resolve all Firm Liabilities that are still outstanding as of the Effective Date ("Outstanding Firm Liabilities"). This duty of cooperation includes but is not limited to providing requested information and certifications/declarations in connection with negotiations with other counsel and third parties and applications to courts, agencies, or other persons/entities. Stern agrees he will not discuss the Firm's liens on the Outstanding Firm Cases or the Outstanding Firm Liabilities or efforts by Thomasson and the Firm to recover on those liens or other claims with any person, or to

6

**EXHIBIT 1**

resolve Outstanding Firm Liabilities unless he obtains Thomasson's prior written consent. If there is a dispute between the Firm and Kim over the allocation of counsel fees in cases where they have acted as co-counsel, Stern shall not act as counsel or advise either side in the dispute but shall maintain a neutral position. Nothing in this Agreement shall prevent the Firm or Thomasson from obtaining factual information from Stern relating to the dispute. If Kim shall seek to prevent Stern from providing such information, he shall take a neutral position and not act as counsel or adviser to either side, or otherwise assist them.

9. Stern agrees he will pursue all Outstanding Firm Cases on which he is working after the Separation Date, in good faith in accordance with his obligations under the Rules of Professional Conduct.

10. Within five (5) business days of the Effective Date, Thomasson shall review the Firm's time records for the cases that followed him to his new firm and Stern shall review the Firm's time records for the cases that followed him to Kim, in Amicus to determine if those records accurately reflect the Firm's time expended in all Outstanding Firm Cases and to communicate their findings to each other upon completion of their review. If the Parties cannot agree on the Firm's time spent for each Outstanding Firm Case within ten (10) business days of the Effective Date, then Thomasson shall have the authority to make the determination and Stern agrees he will not dispute Thomasson's determinations as to the time spent by the Firm's attorneys and paralegal on each of Firm's cases.

11. The Parties agree the attorneys' fees each incurred since the dispute arose on or after June 20, 2020, and all Receiver and EisnerAmper fees, are expenses that

7

**EXHIBIT 1**

were necessarily incurred for the Firm's continued ability to function and benefit and will so advise the Firm's accountant. They also acknowledge and agree that because of the Firm's financial condition, neither will seek reimbursement of these expenses from the Firm or each other.

12. Stern represents the following to Thomasson:

   a. No one, including any client, vendor, creditor, or other person/entity has made a claim, threatened or provided notice of a potential claim or lawsuit, against the Firm, Stern, Thomasson, or any former Firm attorney or employee except the claim previously asserted by Kim.

   b. He is neither aware, nor does he have any reasonable basis to be aware, of any Firm debts or liabilities for which he may be personally liable other than the Firm's two lines of credit with the Santander Bank.

   c. He has cancelled all Firm credit cards that he once had, including the credit cards issued by Chase, American Express, and Wells Fargo, and there is no outstanding balance on those credit cards except for the Chase Credit Card which shall be paid in accordance with Paragraph 5 of this Agreement.

   d. He has not incurred any expenses on the Firm's behalf, or in its name, for which he has not previously been reimbursed.

   e. Since November 20, 2020, he has not made any agreements, representations or promises, with any co-counsel or third party regarding the Firm's share of any fee, expense, or other payment the Firm may be entitled to receive or collect except for discussions with co-

8

**EXHIBIT 1**

counsel in *Wilner* where Stern confirmed the arrangement was that Abraham Kleinman would receive "a third (1/3) plus" of the net attorneys' fees (after deducting awarded costs).

    f. Since June 20, 2020, he has not permanently deleted or transferred any of the Firm's electronic records, files or matters so that Thomasson does not presently have access to them, and (b) he has not copied any of the Firm's electronic records, files or matters, except (i) as authorized by a client and as disclosed to the Receiver and Thomasson, (ii) those electronic records, files and matters contained in Dropbox as of September 2, 2021 ("Dropbox Records"). Effective as of the date Stern transfers his interest in the Firm in accordance with Paragraph 2, Stern shall have no further access to Dropbox or the Firm's records except for access to Amicus for the sole purpose of reviewing time records as provided in Paragraph 10. Stern shall maintain a copy of the Dropbox Records in accordance with N.J. Court Rule 1:21-6, and provide Thomasson a copy of those Dropbox Records upon his reasonable request.

13. Thomasson represents the following to Stern:

    a. No one, including any client, vendor, creditor, or other person/entity has made a claim, threatened or provided notice of a potential claim or lawsuit, against the Firm, Stern, Thomasson, or any former Firm attorney or employee, except the claim previously asserted by Kim.

9

**EXHIBIT 1**

  b. He is not aware of any pending lawsuits, complaints, grievances or other claims pending against Stern by anyone, other than those alleged in the Action, the District Court Action, and the Pepe grievance.

14. Each Party on behalf of themselves and their heirs, executors, successors and assigns, releases, discharges and relinquishes the other from any and all claims and causes of action each may have or claims to have, known and unknown, against the other, arising out of or relating to their partnership and the practice of law at the Firm, including the claims they asserted, or could have asserted, in the Action including any claims that the Firm paid either Thomasson or Stern more than it should have or that the Firm improperly paid the personal expenses of either of them. The released claims and causes of action include, but are not limited to, claims based on contract, tort law, common law, statute and regulations, for damages (compensatory and punitive), injunctive relief and other forms of legal and equitable relief. Excluded from this release is any claim Thomasson or Stern may have against the other for liabilities and obligations relating to a claim by Kim against either or both of them in cases where they/the Firm and Kim acted as co-counsel. This Release includes the aforementioned claims that the Parties may have against the Firm's present and past partners, employees, accountants and agents. But, if an employee, accountant or agent of the Firm makes a claim against one of the Parties, the Release of that claimant, as set forth herein, shall be void with respect to the claims that Party may have against the claimant, and that Party may assert whatever rights he/it may have against the claimant. It is the intention of the Parties, through this Agreement, and with the advice of counsel, to fully, finally and forever settle

10

**EXHIBIT 1**

all such matters and claims relative thereto, except for the obligations imposed by this Agreement.

15. Stern and Thomasson represent and warrant that they have not assigned, transferred or purported to assign or transfer to any other person or entity any rights, claims or causes of actions they may have or have had and no other person or entity has any interest in any such rights claims or causes of action.

16. Stern and Rebecca on behalf of themselves and their heirs, executors, successors and assigns, releases, discharges and relinquishes the other from any and all claims and causes of action each may have or claims to have, known and unknown, against the other including the claims they asserted, or could have asserted, in the District Court Action. The released claims and causes of action include, but are not limited to, claims based on contract, tort law, common law, statute and regulations, for damages (compensatory and punitive), injunctive relief and other forms of legal and equitable relief. It is the intention of Stern and Rebecca, through this Agreement, and with the advice of counsel, to fully, finally and forever settle all such matters and claims relative thereto, except for the obligations imposed by this Agreement.

17. Stern and Rebecca represent and warrant that they have not assigned, transferred or purported to assign or transfer to any other person or entity any rights, Claims or causes of actions they may have or have had and no other person or entity has any interest in such rights, claims or causes of action.

18. Stern, Thomasson, and Rebecca each agrees to treat this settlement as confidential and not to disclose the terms of this Agreement to anyone except their accountants, financial advisors, attorneys and immediate family members, unless

**EXHIBIT 1**

compelled to do so as a result of a subpoena, court order or government agency directive. If any of them should receive such a subpoena, order or directive, they shall immediately provide written notice to the others via email, with the understanding that such notice is intended to provide the others with the opportunity to oppose the request for information regarding the settlement and take the appropriate action. Rebecca may disclose the retraction of Stern, as set forth in Paragraph 1, to those persons to whom his Statements were published; *i.e.,* Douglas Ketterman, D'Lynn Ketterman, Matthew Ketterman, Scott Westlund, Robert Pollom, Craig Stokes, Francis Greene, Grace LaPera, Katelyn Busby, and Alla Gulchina.

19.  The Parties fully understand and agree that this Agreement constitutes a settlement of all disputed claims the Parties asserted, or could have asserted, in the Action and all matters relating to the Firm and that they execute this Agreement solely in order to avoid litigation and its attendant expenses, and that nothing herein shall be construed as an admission of liability or wrongdoing by any of the Parties, which such liability and wrongdoing is expressly denied.  Rebecca and Stern have a similar understanding but only with respect to the claims asserted in the District Court Action.

20.  The Action and District Court Action will be dismissed with prejudice upon the satisfaction of Paragraphs 5 and 6 above by the filing of the Stipulations of Dismissal annexed as Exhibits A and B respectively.

21.  The Parties shall cooperate in good faith and take such further actions and execute such other instruments as may reasonably be necessary to effectuate fully the terms, spirit and intent of this Agreement.

**EXHIBIT 1**

22. This Agreement shall be deemed to have been drafted jointly by counsel for the Parties. The Parties agree and understand that the general rule that ambiguities are to be construed against the drafter shall not apply to this Agreement. If any provision of this Agreement is held to be void or unenforceable by a court of competent jurisdiction, the remaining provisions of this Agreement shall nevertheless be binding upon the Parties with the same effect as though the void or unenforceable part had been deleted; provided, however, that upon any finding by a court of competent jurisdiction that the release is illegal, void or unenforceable, the Parties agree to promptly execute a release, waiver and/or promise of comparable scope that is legal and enforceable.

23. This Agreement shall be governed by and construed under the laws of the State of New Jersey. The Parties agree to submit to the jurisdiction of the New Jersey state courts sitting in Union County for the purposes of enforcing and/or adjudicating any dispute that may arise between them under this Agreement. Stern and Rebecca agree to submit to the jurisdiction of the federal court in the Western District of Texas for the purposes of enforcing and/or adjudicating any dispute that may arise between them under this Agreement. For any act of default alleged hereunder, prior to initiating legal action, there shall be a required notice and opportunity to cure such event of default. Said notice shall be provided to the defaulting party and shall be provided not later than seven (7) days of the party learning of the event of default. The recipient of said notice shall be afforded a period of seven (7) days to cure the event of default. In the event the event of default is not cured, then the non-defaulting party shall have the right to file suit. If any party sues to enforce his rights under this Agreement, the prevailing party to such litigation

**EXHIBIT 1**

shall be entitled to his reasonable attorneys' fees and expenses in such litigation from the non-prevailing party.

24. This Agreement may be executed in counterparts, including electronic or facsimile counterparts, each of which shall be deemed as an original but all of which shall constitute one and the same instrument

IN WITNESS WHEREOF, the parties hereto have set their hands as of the day and year first above written.

_____
Andrew T. Thomasson
Individually and on behalf
of the Firm

Dated: September 2, 2021

_____
Philip D. Stern
Individually and on behalf
the Firm

Dated: September 2, 2021

Stern Thomasson, LLP

By: _____
Gary Roth, Receiver

Dated: September 2, 2021

_____
Rebecca Thomasson

Dated: September 2, 2021

**EXHIBIT 1**